IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN L. LAUXMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-07-509-D |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Procedural History

Plaintiff filed her first application for social security disability insurance benefits on October 4, 2001, in which she alleged she became disabled on February 23, 1999. (TR 68-

70). Following a hearing held September 7, 2002, the administrative law judge issued a decision on October 11, 2002, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 273-279). Plaintiff did not seek further review of this decision. On April 9, 2003, Plaintiff filed her second application for disability insurance benefits (TR 320-322), and this application was administratively denied at the reconsideration level on March 20, 2004. (TR 281). Plaintiff did not seek further review of this decision.

On August 8, 2005, Plaintiff protectively filed her third application for disability insurance benefits (TR 327-331) and her concurrent application for supplemental security income benefits. (TR 581-587). Plaintiff initially alleged that she became disabled on January 1, 2001. (TR 327). Plaintiff's applications were administratively denied. (TR 282, 283, 588-596). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Kallsnick ("ALJ") on November 2, 2006, at which Plaintiff and a vocational expert ("VE") testified. (TR 597-622). During the hearing, Plaintiff amended her alleged disability onset date to September 30, 2001. (TR 601). Plaintiff testified that she was 55 years old, that she had last worked in June 2005 as a part-time (four hours per day) fast food cook, and that she had performed that job for one and half years. Plaintiff testified she was unable to work due to left leg pain and numbness, foot cramping, lower back pain, right knee pain and swelling, left wrist and hand pain, and lack of mobility and grip strength in her left wrist and hand.

The ALJ subsequently issued a decision in which the ALJ found that Plaintiff retained the capacity to perform her previous jobs and that Plaintiff was therefore not disabled within

the meaning of the Social Security Act. (TR 13-19). The agency's Appeals Council declined to review the ALJ's decision. (TR 6-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Decision, Claims, and Responses

Following the established sequential analysis, the ALJ found at steps one and two that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date and that Plaintiff had severe impairments due to bilateral carpal tunnel syndrome, osteoarthritis of the left wrist, and patellofemoral syndrome of the right knee. (TR 15-16). The ALJ further found at step three that Plaintiff's severe impairments were not disabling *per se* under the agency's Listing of Impairments. (TR 16). At step four, the ALJ found that despite Plaintiff's impairments she had the residual functional capacity ("RFC") to perform

the exertional demands of medium work.[1]  Relying on the VE's testimony concerning the exertional requirements of Plaintiff's past relevant work as a short order cook, fast food worker, deli worker, and housekeeper (TR 618) and the VE's responses to hypothetical questions, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act because she retained the RFC to perform her previous jobs. (TR 18).

Plaintiff contends that the ALJ erred by failing to apply the correct legal standard to his evaluation of the opinion of Dr. Murati.  Plaintiff also contends that the RFC assessment made by the ALJ was not supported by substantial evidence because it did not include any manipulative limitations.  Defendant responds that no error occurred with respect to the ALJ's evaluation of the evidence and that substantial evidence supports the Commissioner's decision.

IV. Treating Doctor's Opinions

Plaintiff first contends that the ALJ erred as a matter of law with respect to the ALJ's evaluation of the medical opinion of Dr. Pedro Murati.  The record reflects that Dr. Murati performed a one-time consultative physical evaluation of Plaintiff on July 25, 2002, at the request of Plaintiff's attorney in connection with a worker's compensation claim filed by Plaintiff. (TR 446-449).  Dr. Murati submitted a report of his evaluation of Plaintiff in which the physician indicated he performed grip strength and other testing of Plaintiff's hands and indicated his diagnostic impression that Plaintiff had right carpal tunnel syndrome and left

---

[1] Medium work is defined as work involving lifting up to 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. §§ 404.1567(c), 416.967(c).

carpal tunnel release. (TR 447). Dr. Murati also submitted a form indicating Plaintiff was released to return to work with certain exertional restrictions, including no ladder climbing, no heavy grasping with either hand, no lifting, carrying, pushing, or pulling of over twenty pounds, only occasional repetitive grasping or grabbing, and no use of hooks, knives, or vibratory tools. (TR 449). Dr. Murati indicated that these work-related restrictions were "permanent" effective July 25, 2002. (TR 449).

Although Plaintiff recognizes that Dr. Murati performed a one-time consultative evaluation of Plaintiff, Plaintiff asserts that the ALJ erred in failing to weigh Dr. Murati's medical opinion by employing the factors set forth in the regulations at 20 C.F.R. §§404.1527(d) and 416.927(d). These regulations expressly apply to the administrative factfinder's evaluation of treating source opinions. The ALJ's decision reflects that the ALJ recognized Dr. Murati's statement and considered the statement along with other medical evidence in the record.

"Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). Thus, the ALJ "must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record....[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."

Id. Even if the treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527 and 416.927." Id. (quotation omitted). "Under the regulations, the agency rulings, and [precedential] case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. at 1300 (quotations omitted). A treating physician's opinion may be rejected if it is inconsistent with other medical evidence. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Plaintiff contends that the ALJ erred by failing to give Dr. Murati's opinion concerning her RFC for work controlling weight, or at least failed to give specific, legitimate reasons for rejecting the RFC opinion or consider the factors set forth in 20 C.F.R. §§404.1567(d) and 416.967(d). Defendant first contends that Dr. Murati's opinion was entitled to less weight because it was made "twenty months before the start of the relevant period," which Defendant contends is March 21, 2004, the day after the Commissioner's final decision on Plaintiff's second disability application. Defendant's Brief, at 2, 6. The Defendant's contention finds no support in the ALJ's decision. The ALJ recognized in his decision that Plaintiff had filed one previous application for disability insurance benefits, but the ALJ expressly found there was "no reason to consider the question of whether the

[previous] unfavorable decision...should be reopened and revised." (TR 13). The ALJ went on to consider the evidence in determining that the Plaintiff was not disabled "from September 30, 2001 through the date of this decision." (TR 14). Although the Plaintiff's prior application resulted in an unfavorable administrative decision rendered on March 20, 2004 (TR 281) and Plaintiff did not seek further review of this decision, the ALJ did not explicitly find that the previous decision was *res judicata* as to any claim of disability. Rather, the ALJ considered the evidence in the record with respect to Plaintiff's alleged disability onset date of September 30, 2001, and the ALJ's decision therefore constitutes a *de facto* reopening of the previous application, at least to the extent Plaintiff alleged a disability onset date of September 30, 2001. See Taylor ex rel. Peck v. Heckler, 738 F.2d 1112, 1115 (10th Cir. 1984)(ALJ *de facto* reopened prior decision by reviewing case on its merits and considering additional evidence).

Defendant further responds that Dr. Murati was not a treating physician and Dr. Murati's opinion was therefore not entitled to any more weight than other medical evidence in the record. In addressing a similar claim in an appeal of a social security disability case, the Tenth Circuit Court of Appeals observed in Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003), that a treating physician relationship requires

> both duration and frequency....A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source. Absent an indication that an examining physician presented 'the *only* medical evidence submitted pertaining to the relevant time period,' the opinion of an examining physician who only saw the claimant once is not

8

> entitled to the sort of deferential treatment accorded to a treating physician's opinion.

Id., at 762-763 (quoting Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  Because Plaintiff saw Dr. Murati on only one occasion for a consultative evaluation in connection with her worker's compensation claim and not for purposes of treatment, Dr. Murati cannot be considered a treating physician.  Nevertheless, even though Dr. Murati was not a treating physician, the ALJ was required to consider the opinion, see 20 C.F.R. §§ 404.1527(d), 416.927(d), and to provide specific, legitimate reasons for rejecting it. Doyal, 331 F.3d at 764.

The ALJ's decision reflects both consideration of Dr. Murati's RFC opinion and specific, legitimate reasons for rejecting the opinion. (TR 17-18).  These reasons, including the reports of Plaintiff's physical therapists in October and November 2005 (TR 562-578), the November 2005 consultative examination report of Dr. Brennan (TR 519-525), and the January 2006 RFC assessment by the non-examining medical consultant based on the consultant's review of the medical record (TR 526-533), provide sufficient reasons for the ALJ's rejection of Dr. Murati's opinion.

V. RFC Finding

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence in the record.  Specifically, Plaintiff contends that the ALJ erroneously concluded that her left hand impairment did not result in manipulative limitations further restricting her ability to perform the exertional requirements of medium work.  Plaintiff takes issue with the

9

ALJ's reliance on (1) physical therapy progress notes from Plaintiff's physical therapists in October and November 2005 and (2) the report of a consultative physical examination of Plaintiff performed by Dr. Brennan in November 2005. Plaintiff contends that the physical therapy she underwent in October and November 2005 was for back and neck injuries following a September 2005 car accident and therefore the physical therapists' notes did not indicate her left hand condition had improved. The ALJ did not suggest, however, that the physical therapists' progress notes showed improvement in her left hand or wrist. Rather, the ALJ's decision reflects consideration of the physical therapy records with respect to Plaintiff's complaint of neck, shoulder, and lower back pain, headaches, and leg numbness following a car accident in September 2005. (TR 17). With respect to Plaintiff's testimony concerning left hand stiffness and grasping difficulties, the ALJ reasoned in his decision that her testimony "runs counter to examinations showing her to have a 5/5 grip and 5/5 strength in all extremities." (TR 18). This rationale refers to Dr. Brennan's report of his November 2005 consultative examination of Plaintiff and accurately describes Dr. Brennan's findings on physical examination. Although Plaintiff contends that there was conflicting evidence in the record, Plaintiff refers only to (1) a chiropractor's cryptic office note in September 2005 that Plaintiff complained of left hand numbness, among other things, and (2) another brief office note from Dr. Self in September 2005 that Plaintiff's left wrist exhibited "arthritic changes" and "diminished" range of motion. (TR 518, 546). Dr. Brennan's report certainly contained extensive clinical observations and findings that the ALJ could properly consider in determining Plaintiff's RFC for work. Neither the treating chiropractor's or the treating

physician's September 2005 office notes provided probative evidence of the severity of Plaintiff's left hand impairment or the functional effect the left hand impairment would have on her ability to work. Under these circumstances, the ALJ did not err in relying on Dr. Brennan's report as showing that Plaintiff's left wrist and hand impairment did not further restrict her ability to perform the full range of medium work. There is substantial evidence in the record to support the ALJ's RFC determination, including the report of Dr. Brennan and the non-examining state agency consultant's RFC assessment based on a review of the medical evidence in the record. There is other evidence in the record supporting the ALJ's RFC finding, including the report of a treating medical provider in November 2003 indicating Plaintiff's left wrist exhibited full range of motion (TR 476), the report of an examining physician in August 2002 stating that Plaintiff's right knee showed arthritic changes but no range of motion deficit (TR 473), and the report of another examining physician in October 2002 stating that Plaintiff exhibited no motor weakness or sensory deficit. (TR 469).

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      March 3, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right

to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   11th   day of   February  , 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE